# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42791-5-II |
| Appellant, | |
| v. | |
| JOHN HYRUM PARKES, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — John Hyrum Parkes appeals his conviction of four counts of first degree child molestation. Parkes argues that the trial court abused its discretion in (1) admitting a detective's testimony about statements E.T. made to the detective, (2) denying his motion for mistrial for admitting that testimony, and (3) refusing to allow a missing witness instruction. Because the trial court abused its discretion when it admitted Detective Berg's testimony, we reverse Parkes's convictions and remand for a new trial.

## FACTS

In 1996, Parkes[1] married Shelley Parkes. Shelly had a five-year-old daughter, E.T.,[2] from a previous relationship. E.T. primarily lived with her biological father, but stayed with her mother and Parkes every other weekend.

---

[1] Several witnesses share the last name "Parkes." In this opinion, "Parkes" refers to the defendant-appellant, John Parkes. Others sharing that last name will be referred to by their first names to avoid confusion; no disrespect is intended.

[2] We use initials to protect the victim's identity and privacy interests. *See* General Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crimes* (Wash. Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts/.

E.T. alleged that Parkes molested her from the time she was approximately 6 years old until she was 12. E.T. disclosed the abuse to her friend, Marina Wilson, when she was in third grade; her friend, Gustav St. Andrews, when she was in seventh grade; and her aunt, Kelly Gates-Baird, when she was a junior in high school. E.T. asked each person to not tell anyone else because she did not want to ruin her mother's marriage and her family. Per E.T.'s request, no one reported the allegations.

In 2009, when E.T. was a senior in high school, Parkes and Shelley separated. In January 2010, E.T disclosed the history of sexual abuse to Shelley. Shelley reported E.T.'s claims to the police, and Detective Teresa Berg took E.T's statement in March 2010. Parkes was charged with five counts of first-degree molestation for molesting E.T. when she was a minor.

At trial, the State called Detective Berg to testify. On cross-examination, defense counsel highlighted an inconsistency in E.T.'s story about where E.T.'s mother had been after one incident by asking Detective Berg about statements E.T. made to Detective Berg and written in Detective Berg's report. Specifically, defense counsel asked:

[Defense Counsel]: Okay. Looking at your report on page four, do you recall there being a question of [E.T.] talking about Mr. Parkes ejaculating in her hair?

[Detective Berg]: Yes.

[Defense Counsel]: Okay. And she disclosed or provided information surrounding that?

[Detective Berg]: She did.

[Defense Counsel]: All right. And did she say to you that after this event occurred that in the morning, she went to her mother and told her mother that something was in her hair?

[Detective Berg]: Yes.

2

3 Verbatim Report of Proceedings (VRP) at 428-29. On redirect, the State asked Detective Berg about E.T.'s other statements to her regarding other instances of molestation that were contained in Detective Berg's report. Parkes objected several times, arguing the testimony was beyond the scope of cross. The State argued that ER 106 (the rule of completeness) allowed E.T.'s other statements that were made to Detective Berg to come in. The trial court agreed with the State and overruled Parkes's objections.

The jury found Parkes guilty on four of the five counts of child molestation. Parkes appeals.

## ANALYSIS

Parkes claims that the trial court erred when it admitted Detective Berg's testimony regarding E.T.'s statements. We agree.

### A. LEGAL PRINCIPLES

We review the trial court's determination to admit or exclude evidence for an abuse of discretion. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *State v. Barnett*, 104 Wn. App. 191, 199, 16 P.3d 74 (2001). An abuse of discretion is found when "'no reasonable person would take the view adopted by the trial court.'" *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001) (quoting *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)). When considering evidentiary rulings, "[a]ppellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion." *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007).

ER 106 allows a party to supplement portions of a writing or recorded statement offered by an adverse party with other relevant portions as fairness requires: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it." The rule's purpose is "to protect against the misleading impression that might otherwise result from hearing or reading material out of context." 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON EVIDENCE § 106:1, at 127 (2015-2016 ed.). Once relevance has been established, the court determines whether the offered portions of the statement are necessary to (1) explain the admitted evidence, (2) place the admitted portions in context, (3) avoid misleading the trier of fact, and (4) insure a fair and impartial understanding of the evidence. *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001), *review denied*, 146 Wn.2d 1022 (2002). The rule of completeness doctrine does not "require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

B.       ADMISSIBILITY OF E.T.'S STATEMENTS ABOUT OTHER INCIDENCES OF ABUSE

Here, the issue that the defense raised in its cross-examination of Detective Berg involved whether, the morning after Parkes allegedly ejaculated into E.T.'s hair, E.T. "went to her mother and told her mother that something was in her hair." 3 VRP at 429. Detective Berg answered in the affirmative, and the defense rested.

On redirect of Detective Berg, the State elicited, over defense's objections, testimony about statements E.T. made to Detective Berg relating to other alleged instances of inappropriate conduct that E.T. did not testify to at trial and that were not discussed by the defense during cross-

examination. After eliciting testimony from Detective Berg about statements E.T. made to her regarding the "hair incident,"[3] the State elicited testimony about E.T.'s statements that (1) showed Parkes's abuse was ongoing; (2) Parkes would watch pornography and, contrary to E.T.'s testimony, there would be touching between E.T. and Parkes while watching pornography; (3) there was general inappropriate touching that happened, and the inappropriate touching was continuous until E.T. was approximately 12 years old; (4) E.T. tried to avoid the inappropriate touching by wrapping herself in multiple blankets when she slept; (5) Parkes came into her room naked at night; (6) E.T. felt anger towards Parkes; (7) Parkes would try to give E.T. back massages; (8) Parkes did not tell E.T. that she should not tell anyone about the abuse; (9) Parkes made E.T. insert her pinky finger into his urethra in the bathroom; and (10) Parkes made E.T. touch his penis.

ER 106 gives the trial court discretion to allow the adverse party to introduce "any other part" of the writing or recorded statement, "which ought in fairness to be considered contemporaneously with it," as a way to avoid any misleading impressions that could result from a party's partial introduction of a writing or recorded statement. Here, it was fair for the trial court to allow the State to elicit testimony from Detective Berg relating to the defense's question on cross-examination about E.T.'s actions the morning after the "hair incident."

It was fair because the defense "opened the door" to allow the State to examine Detective Berg and her report regarding whether E.T. "went to her mother and told her mother that something was in her hair." 3 VRP at 429. And the State elicited such testimony. In so doing, the State was

---

[3] Before addressing the "hair incident," raised by the defense on cross-examination, the State elicited from Detective Berg that E.T. had reported that Parkes used a vibrator on her, that E.T. had not said Parkes touched her breasts, and that Parkes had told E.T. to put on her pajamas without her underwear.

able to show that E.T.'s statements to Detective Berg were consistent with the testimony E.T. had given at trial. The insinuation of an inconsistency between E.T.'s statements regarding the "hair incident" had, at this point, been rebutted.

It was, however, unfair for the trial court to allow the State to elicit from Detective Berg all of the other statements that E.T. had made that were unrelated to the "hair incident." This is especially so when the remainder of E.T.'s statements in Detective Berg's report had not been challenged by the defense on cross-examination and Detective Berg was allowed to testify about other statements E.T. made relating to other incidents that were not testified to by E.T. at trial. Therefore, we hold that the trial court abused its discretion in allowing the State to elicit from Detective Berg all the other statements that E.T. made unrelated to the "hair incident."

C.    HARMLESS ERROR

We also hold that the error is not harmless. "A nonconstitutional error is cause for reversal only if we can conclude that, within reasonable probabilities, the outcome of the trial would have been materially different had the error not occurred." *State v. Bargas*, 52 Wn. App. 700, 705, 763 P.2d 470 (1988), *review denied*, 112 Wn.2d 1005 (1989).

Given Detective Berg's position as a police officer, her recitation of the allegations potentially gave E.T.'s statements a heightened level of credibility in the eyes of the jury. *See, e.g.*, *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) (noting that "police officers' testimony carries an 'aura of reliability.'" (quoting *State v. Demery*, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001)). In addition, the State was able to present testimony through Detective Berg of additional incriminating incidents that E.T. had never testified to. Given the volume and substance of the testimony from Detective Berg, there is a reasonable probability that the outcome of Parkes's

trial was affected by the improper testimony. Therefore, we reverse Parkes's convictions and remand for new trial.[4]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, C.J.

_____
Maxa, J.

---

[4] Because we reverse on other grounds, we do not address the issue of whether the trial court erred in denying Parkes' motion for mistrial or whether the trial court erred in refusing to give a missing witness instruction.